**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: sbogdanovich@bursor.com

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

KRISTA CURRY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

THE REALREAL, INC.,

Defendant.

Case No. 3:26-cv-2929-VC

**OPPOSITION TO MOTION TO COMPEL ARBITRATION**

Hearing Date: July 16, 2026
Time: 10:00 a.m.
Courtroom: 3, 17th Floor
Judge: Hon. Vince Chhabria

# TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ........................................................................................................ 3

A. Legal Standard ........................................................................................................ 3

B. Plaintiff Never Unambiguously Manifested Her Assent To Arbitration After Clicking A "Reject All" Button ........................................................................ 3

C. The RealReal's Small Grey Terms Are Not Reasonably Conspicuous .................. 7

III. CONCLUSION ........................................................................................................ 14

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ballou v. Asset Mktg. Servs., LLC*,
46 F.4th 844 (8th Cir. 2022) ........................................ 7

*Benson v. Double Down Interactive, LLC*,
798 F. App'x 117 (9th Cir. 2020) ........................................ 14

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........................................ passim

*Carbonell v. Seatgeek, Inc.*,
2025 WL 2643847 (D. Nev. Sept. 15, 2025) ........................................ 2, 12

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ........................................ 4

*Cruz v. Tapestry, Inc.*,
113 Cal. App. 5th 943 (2025) ........................................ passim

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ........................................ 12

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ........................................ 8, 9, 10

*Herzog v. Superior Ct.*,
101 Cal. App. 5th 1280 (2024) ........................................ 3, 5, 6

*In re Stubhub Refund Litig.*,
2023 WL 5092759 (9th Cir. Aug. 9, 2023) ........................................ 9, 10

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ........................................ 12, 13

*Lee v. Intelius Inc.*,
737 F.3d 1254 (9th Cir. 2013) ........................................ 4

*Long v. Provide Com., Inc.*,
245 Cal. App. 4th 855 (2016) ........................................ 6

*Lopez v. Dave Inc.*,
2022 WL 17089824 (N.D. Cal. Nov. 21, 2022) ........................................ 9, 10

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......... 2, 4

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 13

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......... 13

*Quamina v. JustAnswer LLC*,
721 F. Supp. 3d 1026 (N.D. Cal. 2024) .......... 14

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) .......... passim

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
666 F. Supp. 3d 1089 (C.D. Cal. 2023) .......... 13

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) .......... 4

*Weeks v. Interactive Life Forms, LLC*,
100 Cal. App. 5th 1077 (2024) .......... 6

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) .......... 1

## I. INTRODUCTION

In 2018, California passed the California Consumer Privacy Act, which "requires that companies give users *the choice to opt out* of any collection of personal information for 'cross-context behavioral advertising.'" *Wiley v. Universal Music Grp., Inc.*, --- F. Supp. 3d ----, 2025 WL 3654085, at *4 (N.D. Cal. Dec. 17, 2025) (emphasis added). "Today, when California users visit a website, they can expect to see a pop-up screen giving them the option to opt out of various types of tracking." *Id*. Yet when Plaintiff Krista Curry first visited Defendant The RealReal, Inc. ("TRR")'s website and clicked a big "Reject All" button, Defendant allowed her to be tracked anyway. Compl., ¶¶ 3-4, 10, and 68, and Figures 1 & 2 (reproduced below). So Ms. Curry brought suit, alleging violations of various state and federal privacy laws.







TRR now unironically argues Ms. Curry waived her right to be in court because she "interact[ed] with the cookie banner," ECF No. 13 ("MTCA") at 8, by clicking the "Reject All" button. Yes, you read that right. According to TRR, clicking "Reject All" means the opposite of what the text of the button says—*i.e.*, that one *accepts all* the Terms of Service. TRR cites no authority for this Orwellian proposition, and Plaintiff's counsel is aware of none. Needless to say,

TRR's argument fails because Ms. Curry "never clicked the 'Accept' button on the cookie banner. Thus, it cannot be said that the plaintiff[] 'took an action that unambiguously manifested [her] assent to be bound by the terms and conditions.'" *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *3 (N.D. Cal. Jan. 17, 2024) (Chhabria, J.) (citing *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 858–59 (9th Cir. 2022)).

Nor can TRR resuscitate its arbitration motion by pointing to a fine print notice on its sign-in screen. *See* Bogdanovich Decl., ¶ 3 (reproduced below). Even assuming Plaintiff signed up using the TRR pop-up, the textual notice advising users of TRR's terms of service is not reasonably conspicuous.




The textual notice of terms "is the most unremarkable item on the sign-in pop-up," *Carbonell v. Seatgeek, Inc.*, 2025 WL 2643847, at *3 (D. Nev. Sept. 15, 2025), as well as the page more generally. TRR's terms are printed in light grey font that is fainter and smaller than anything else on the screen. Everything else on the page uses larger fonts, darker and brighter colors, bigger buttons, stylized icons, and larger images. "By placing the notice text in barely readable gray font smaller than many of the other more prominent elements … [defendant] failed

to give [plaintiff] reasonable notice that clicking the action button would bind her to the Terms of Use." *Cruz v. Tapestry, Inc.*, 113 Cal. App. 5th 943, 954 (2025). TRR's motion should be denied.

## II. ARGUMENT

### A. Legal Standard

"In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman*, 30 F.4th at 855. California law applies here because both Plaintiff and Defendant are from California. Compl., ¶¶ 9 and 15.

Under California law, where, as here, there is no evidence that plaintiff knew about Defendant's arbitration clause, "an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856. "Because 'online providers have complete control over the design of their websites,' 'the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers.'" *Id.* at 857.

### B. Plaintiff Never Unambiguously Manifested Her Assent To Arbitration After Clicking A "Reject All" Button

"In the context of an internet transaction, 'in the absence of actual notice, a manifestation of assent may be inferred from the consumer's actions on the website—including, for example, checking boxes and clicking buttons—but any such action must indicate the parties' assent to the *same thing*.'" *Herzog v. Superior Ct.*, 101 Cal. App. 5th 1280, 1294 (2024) (emphasis in original) (citing *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 461 (2021)). "The parties' outward manifestations must show that the parties all agreed 'upon the same thing in the same sense.' If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent[.]" *Herzog*, 101 Cal. App. 5th at 1293 (citing *Sellers*, 73 Cal. App. 5th at 460). In other words, where a "screen assign[s] two possible meanings to the act of clicking," the manifestation of assent is not "unambiguous." *Herzog*, 101 Cal. App. 5th at 1304.

Here, Ms. Curry's "outward manifestations" do not show she "agreed 'upon the same thing in the same sense.'" She clicked a big "Reject All" button on a cookie banner.




TRR contends that "Plaintiff assented to the Terms… during her interaction with the cookie banner." MTCA at 8. But there are three problems with this line of reasoning. The first is that Plaintiff's "interaction" consisted of clicking the big "Reject All" button. Down is not up and no is not yes. In that same vein, TRR fails to cite a single case holding that clicking "Reject All" signifies unambiguous *acceptance of all* terms. To the contrary, "where a website specifically states that clicking means one thing, that click does not bind users to something else." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016) (citing *Lee v. Intelius Inc.,* 737 F.3d 1254 (9th Cir. 2013)). If anything, most consumers reviewing TRR's cookie banner would reasonably understand clicking "Reject All" to manifest *rejection* of *all* the "Terms of Service" listed in that banner. *Cf. McClung*, 2024 WL 189006, at *3 (Chhabria, J.) (no unambiguous assent where plaintiff never clicked the "Accept" button on the banner).

The second problem is that the cookie banner purports to be "a browsewrap agreement … in which the website provider assumes assent is given by mere use of the website." *Sellers*, 73 Cal. App. 5th at 470. "Courts consistently decline to enforce browsewraps." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) (citing cases). While "a manifestation of assent may be inferred from the consumer's *actions* on the website—including, for example,

checking boxes and clicking buttons," *Herzog*, 101 Cal. App. 5th at 1294 (emphasis added), Plaintiff's counsel is not aware of any binding authority holding that a plaintiff *unambiguously* assents "by continuing to browse the site." Indeed, any inference one makes from another's passive browsing would be "ambiguous" at best. This is especially true, where, as here, Plaintiff's continued browsing was coupled with the click of a Reject All button. This cannot be enough. The standard is not a possible—or even *probable*—manifestation of assent. It is an "unambiguous" one. *Herzog*, 101 Cal. App. 5th at 1304.

Third, even assuming a consumer understood that their passive browsing manifested assent despite their clicking of the "Reject All" button, there is yet another, independent problem with TRR's cookie banner: it ascribes multiple meanings to what its Terms of Service even signify. On one hand, the cookie banner's discussion of various privacy options can give consumers the impression that TRR's Terms of Service simply refer to various privacy and tracking technology *terms*. But they do not make clear to consumers that these same Terms of Service *also* contain a binding contract that would compel users to arbitrate.

*Herzog* is instructive on this point. There, the California Court of Appeal held a medical app user did not unambiguously manifest assent to an arbitration provision in a defendant's hyperlinked terms where the user affirmatively checked an I agree to the terms box on the following screen. 101 Cal. App. 5th at 1289 (reproduced below).



*Herzog* held that the plaintiff's check of the I agree box could not establish unambiguous assent to any one set of terms, because the document that hyperlinked to the green Terms of Use next to the checkbox discussed an arbitration provision, whereas the text block immediately above the I agree box discussed the processing of users' "sensitive health information." *Id*. at 1304. "[T]he 'Legal' screen assigned two possible meanings to the act of clicking the checkbox—one narrow and explicit, the other broad and implicit. It therefore created ambiguity with respect to whether users who clicked on the checkbox next to 'I agree to Terms of Use' were agreeing to have their personal information collected, used and shared 'consistently with' the Terms of Use and stored and processed by Dexcom and/or its affiliate in the United States, or whether they were consenting to be bound by all of the terms in the hyperlinked webpage, including the requirement of binding arbitration in the event of a legal dispute arising from injuries allegedly caused by Dexcom's products." *Id*.

Again, the same is true here. Even if a user clicked the "Accept All" button on TRR's cookie banner here and understood she was agreeing to the Terms of Service, she would not necessarily understand she was unambiguously agreeing to *arbitration* as opposed to the site's use of *tracking technologies*. Like the page in *Herzog*, the cookie banner here "assigned two possible meanings to the act of clicking…—one narrow and explicit, the other broad and implicit. It therefore created ambiguity." 101 Cal. App. 5th at 1304. As California appellate courts have repeatedly cautioned: "there is very little empirical evidence regarding 'what the average internet user perceives to be the meaning of the phrase 'terms of use' or 'terms and conditions,' or the degree to which he or she is aware that … a binding contract regarding more than just the promise to pay may be being entered into.'" *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 475 (2021); *accord Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077, 1087 (2024) (quoting same); *Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 867 (2016).

As such, if a user's click of an "I agree to the terms" checkbox was not enough to show unambiguous assent in *Herzog*, then surely Ms. Curry's click of the "Reject All" button cannot show unambiguous *assent* either.

### C. The RealReal's Small Grey Terms Are Not Reasonably Conspicuous

Even assuming Ms. Curry did interact with the Sign-in/Sign Up screen, it would still fail to form a contract because TRR did not provide reasonably conspicuous notice of its Terms. As an initial matter, TRR "provides only a cropped, close-up screenshot of the [Sign-in/Sign-up pop-up], with most of the webpage omitted." *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 861 (8th Cir. 2022). But this is misleading, as anything can be made to appear more conspicuous underneath a magnifying glass. *See id*. Instead, in judging conspicuousness, we review "the overall design of the webpage." *Berman*, 30 F.4th at 857; *accord Ballou*, 46 F.4th at 861 (same) (citation omitted). Here, "the overall design of the webpage" shows that TRR's Sign-in pop-up is but one of *three* that a user confronts on a busy webpage. *See* Bogdanovich Decl., ¶ 3.




The textual notice of terms here is the least noticeable element on the entire page. It is printed in a light grey font that is much smaller than any other text not only on the Sign-in pop-up, but anywhere on the screen. The textual notice is dwarfed by four big buttons above it, with each button containing text which is nearly twice as big, and all of which use more distinctive colors. The Sign Up button is in pure black with text in white font, the Apple button uses black

font, the Facebook button uses a bright blue font, and the Google button uses a rainbow G icon. The text on both the cookie banner and Google screen uses comparatively larger sized fonts, as does the rest of the webpage. The top of the webpage contains a rainbow "The RealReal" title in font four times the size of TRR's textual notice of terms, a large yellow banner advertising a "$25 Off" in even larger black font, and contains colored images of various products.

The test is not whether the terms are visible; the test is whether they are reasonably *conspicuous*. Merriam-Webster defines conspicuous as "attracting attention; striking." https://www.merriam-webster.com/dictionary/conspicuous. In other words, "a webpage must take steps 'to capture the user's attention.'" *Berman*, 30 F.4th at 857. If everything else on the page uses brighter colors, larger fonts, and more distinctive bolding, then it cannot be said that the lightest and smallest grey terms do anything to "capture the user's attention." *Id*. After all, "[w]ebsite users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be *prominently displayed*." *Id*. (emphasis added). Here, they are not.

Indeed, the *Berman* court's description of its failed notice is equally apt here:

> The text disclosing the existence of the terms and conditions on these websites is the antithesis of conspicuous. It is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye. The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else. And the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text. Far from meeting the requirement that a webpage must take steps "to capture the user's attention and secure her assent," the design and content of these webpages draw the user's attention away from the most important part of the page.

*Berman*, 30 F.4th at 856-57.

While there is no "checklist for website designers," or "per se design rules," used to determine whether a given textual notice is reasonably conspicuous, *Godun v. JustAnswer LLC*, 135 F.4th 699, 710 (9th Cir. 2025), that does not mean anything goes. Rather, "reference to past cases can help calibrate judges' instincts and ensure some modicum of consistency." *Id*. at 715

(Nelson, J. concurring). And in cases like this one, where notice is printed in a small "grey shade that contrasts … significantly less than the other text on the page," courts have consistently held they are not reasonably conspicuous. *Id*. at 711 (majority) (citing *Sellers*, supra, 73 Cal. App. 5th at 481 (holding same)); *accord Cruz*, 113 Cal. App. 5th at 954; *Berman*, 30 F.4th at 856-57; *In re Stubhub Refund Litig.*, 2023 WL 5092759, at *2 (9th Cir. Aug. 9, 2023); *Lopez v. Dave Inc.*, 2022 WL 17089824, at *2 (N.D. Cal. Nov. 21, 2022) (Chhabria, J.), *aff'd,* 2023 WL 8594393 (9th Cir. Dec. 12, 2023).

A compilation of the screens in those cases are reproduced below.




*Berman*, 30 F. 4th at 858, App'x A.




*Godun*, 135 F.4th at 705




*Lopez*, 2022 WL 17089824, at *2




*Sellers*, 73 Cal. App. 5th at 455




*In re Stubhub*, 2023 WL 5092759, at *2




*Cruz*, 113 Cal. App. 5th at 962, App'x A.

Perhaps the most similar recent case is *Carbonell*, where the court held the following "sign-in pop-up window" failed to give reasonably conspicuous notice. 2025 WL 2643847, at *3.




"The line of text is the most unremarkable item on the sign-in pop-up. It is in small, grey font, and located just above a larger, prominent black 'Sign Up' button, thereby de-emphasizing its importance." *Id*. at *3. "Defendant surely could have done more to emphasize the existence of an agreement—bolding the hyperlink or making it larger or a different color." *Id*. (collecting cases). The only case TRR relies on, *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911 (N.D. Cal. 2024), is readily distinguishable for this exact reason. MTCA at 11. In *Ghazizadeh*, the court held that a defendant gave reasonably conspicuous notice of terms because "they were bolded in a color darker than the other words in the statement." *Id*. at 924.

Indeed, where the Ninth Circuit has held that sign-in wrap notice was sufficiently conspicuous, it highlighted that the terms were either set off in a bright *contrasting* color, or were set off in their own *large* "interactable boxes" on a screen that "lacks clutter." *Keebaugh v.*

*Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1011 (9th Cir. 2024) ("Below the Play button … are two distinct interactable boxes—… the second, labeled 'Terms of Service,' which hyperlinks players to the full text of the Terms of Service when pressed."); *see id*. at 1021 ("the sign-in screen here lacks clutter."); *accord Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023) ("*crucially*, the 'Terms of Use' hyperlink is conspicuously distinguished from the surrounding text in **bright blue font**, making its presence readily apparent.")(Emphasis added); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) ("the hyperlinked phrase 'terms of use' is **colored bright green**—contrast[ing] against the surrounding … and adjacent black text.") (Emphasis added).

Here, however, TRR never set its Terms of Service apart by using a contrasting color or a large "interactable box" "emphasized through white borders outlining the hyperlinks." *Keebaugh*, 100 F.4th at 1011 and 1021. Instead, they were in the same light grey text as the rest of the sentence and differentiated only by underlining. But appellate courts have repeatedly warned website designers that "the presence of a hyperlink 'must be readily apparent,' and '[s]imply underscoring words or phrases ... will often be insufficient to alert a reasonably prudent user that a clickable link exists.'" *Keebaugh*, 100 F.4th at 1014 (citing *Berman*, 30 F. 4th at 857 and *Sellers*, 73 Cal. App. 5th at 481).

Indeed, courts have found grey terms differentiated only by underlining were not reasonably conspicuous even in cases where "the notice language … is not quite as miniscule as in *Berman* and *Sellers*, and the rest of the webpage contains fewer colorful distractions." *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1096 (C.D. Cal. 2023). As in *Serrano*, here, "the lighter font of the notice language … blends into the white background more than the darker writing above it, drawing attention away from it." *Id*.

Against the weight of all this contrary authority, TRR cites nothing, and conclusorily asserts that "Plaintiff was clearly and conspicuously presented with the Terms … on multiple occasions." MTCA at 13. This changes nothing. As the California Court of Appeal noted in *Cruz*, the fact a plaintiff made "numerous purchases over the course of years [and] create[d] customer

accounts," did not alter its conclusion that grey underlined terms were inconspicuous. 113 Cal. App. 5th at 957. As Judge Donato observed "The obvious problem is that aggregating individually insufficient forms of notice does not somehow add up to a positive." *Quamina v. JustAnswer LLC*, 721 F. Supp. 3d 1026, 1040 (N.D. Cal. 2024), *aff'd sub nom. Godun*, 135 F.4th 699 (9th Cir. 2025). "Repeated use of a website or mobile application does not contribute to constructive notice because users are no more likely to stumble upon inconspicuous hyperlinks on their hundredth or thousandth visit than they are on their first." *Id*. (quoting *Benson v. Double Down Interactive, LLC*, 798 F. App'x 117, 119-120 (9th Cir. 2020)).

## III. CONCLUSION

For these reasons, TRR's Motion to Compel Arbitration should be denied.

Respectfully submitted,

Dated: June 10, 2026

**BURSOR & FISHER, P.A.**

By: *__/s/ Stefan Bogdanovich__*

Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorney for Plaintiff*