FAEGRE DRINKER BIDDLE & REATH LLP
Paul A. Rosenthal (SBN 338994)
paul.rosenthal@faegredrinker.com
600 Campus Drive
Florham Park, New Jersey 07932
Telephone: +1 973 549 7000
Facsimile: +1 973 360 9831

Attorneys for Defendant
The RealReal Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

KRISTA CURRY, individually and on behalf of all other similarly situated,

Plaintiff,

v.

THE REALREAL INC.,

Defendant.

Case No. 3:26-cv-02929

District Judge: Vince Chhabria

**DEFENDANT THE REALREAL INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO COMPEL ARBITRATION**

Date: July 16, 2026
Time: 10:00 a.m.
The Hon. Vince Chhabria

Complaint Filed: April 3, 2026

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiff's Interactions with the Sign Up / Sign-In Pop-Up Provided Sufficient Notice .......... 2

B. Plaintiff's Reliance on the Cookie Banner Confirms her Notice of the Terms .......... 6

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Baugus v. Event Tickets Center, Inc.*,
2026 WL 866840 (S.D.N.Y. Mar. 30, 2026)....................10

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022)....................2, 3, 5

*Carbonell v. Seatgeek, Inc.*,
2025 WL 2643847 (D. Nev. Sept. 15, 2025)....................4

*Cruz v. Tapestry, Inc.*,
113 Cal. App. 5th 943 (2d Dist. 2025) (Opp. 9)....................4

*Gianne v. Accor Management US Inc.*,
2026 WL 925522 (C.D. Cal. Mar. 31, 2026)....................7

*Godun v. JustAnswer, LLC*,
135 F.4th 699 (9th Cir. 2025)....................2, 3

*Herzog v. Superior Court*,
101 Cal. App. 5th 1280 (4th Dist. 2024)....................9, 10

*Hong v. StubHub, Inc.*,
2024 WL 4720924 (C.D. Cal. Sept. 9, 2024)....................10

*Hooper v. Jerry Ins. Agency*,
675 F. Supp. 3d 1027 (N.D. Cal. 2023)....................3

*Keebaugh v. Warner Bros. Enter. Inc.*,
100 F.4th 1005 (9th Cir. 2024)....................4, 5

*Lopez v. Dave Inc.*,
2022 WL 17089824 (N.D. Cal. Nov. 21, 2022)....................3

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024)....................8

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....................3

*Oberstein v. Live Nation Enter. Inc.*,
60 F.4th 505 (9th Cir. 2023)....................5

*Penning v. NVIDIA Corp.*,
2026 WL 1433313 (N.D. Cal. May 21, 2026)....................8, 9

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. Apr. 23, 2020)....................3

*In re Point Cntr. Fin., Inc.*,
2016 WL 11723668 (C.D. Cal. Aug. 30, 2016) ... 6

*Quamina v. Just Answer LLC*,
721 F. Supp. 3d 1026 (N.D. Cal. 2024) ... 5

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) ... 7, 8

*Slaviero v. Baby List, Inc.*,
2026 WL 1097746 (N.D. Cal. Apr. 22, 2026) ... 4

Defendant The RealReal Inc. ("TRR"), by and through its undersigned counsel, hereby submits this memorandum of law in response to Plaintiff's Opposition, Dkt. No. 16 (the "Opp.") and in further support of its Motion to Compel Arbitration, Dkt. No. 13 (the "Motion").

## I. INTRODUCTION

Plaintiff's Opposition does not dispute (and therefore concedes) several fundamental elements of the Motion. Specifically, Plaintiff fails to respond to legal arguments, including the existence and import of a delegation clause, that Plaintiff's claims fall within the scope of the arbitration agreement, and that a stay would be warranted should the Court grant TRR's requested relief. Significantly, the Opposition also does not dispute material facts such as that Plaintiff visited the Website, signed up for a TRR account, and completed a purchase as described in the Motion and supporting declaration. Thus, after cutting through Plaintiff's sarcasm-riddled rhetoric, the only disputed aspect of TRR's motion is whether Plaintiff was sufficiently placed on notice of the arbitration agreement during her many visits to, and interactions with, the Website. The undisputed record confirms that she was and, therefore, this claim should be compelled to arbitration.

Plaintiff first interacted with the disclosure language and hyperlinked Terms and Conditions ("Terms") when she registered for an account, signifying her intent to engage in an ongoing relationship with TRR. Each of the dozens of times thereafter that Plaintiff signed into her account, she was again presented with the disclosure and clicked an action button (signing in), which renewed her manifestation of consent to the Terms. The Court need look no further in compelling this matter to arbitration.

That Plaintiff also received notice of the Terms via the Website's cookie banner bolsters that decision. The Opposition's emphasis on the cookie banner as allegedly insufficient, on a standalone basis, mischaracterizes TRR's position. It is undisputed that by the time Plaintiff reached the cookie banner she had already interacted with the pop-up in the center of the webpage to either "Sign Up" for or "Sign In" to her account. And Plaintiff's admitted review of, and reliance upon, the language of the cookie banner creates further notice of the Website's Terms and the agreement to arbitrate. That Plaintiff allegedly opted to "Reject All" tracking software does not act

as a rejection of the Terms. Plaintiff's argument seeks to have it both ways—asking to rely on the representations of the cookie banner to allege that TRR did not honor her privacy choices, but rejecting any notice afforded by the language of that same banner.

Plaintiff's claims should be compelled to arbitration, based on Plaintiff's notice of, and assent to, the arbitration agreement, and this proceeding should be stayed until its resolution.

## II. ARGUMENT

### A. <u>Plaintiff's Interactions with the Sign Up / Sign-In Pop-Up Provided Sufficient Notice</u>

The Opposition does not deny that Plaintiff interacted with the Website's pop-up when she signed up for her TRR account or on the dozens of occasions that she returned to the Website. (Mot. 9–11.) Instead, Plaintiff relies on a series of omissions and mischaracterizations to try and undermine Plaintiff's assent to the Terms and arbitration agreement during the required Sign Up and Sign In website flows, including analogizing TRR's disclosure language to that of a browsewrap agreement, ignoring the context of the transaction and Plaintiff's reliance on the representations in the cookie banner, and omitting that Plaintiff would have interacted with the Sign Up/Sign In box (and toggling between those two pages) every time she visited the Website. The arbitration agreement should be enforced because the Website provided "plainly readable" notice, is consistent with the parties' continuing relationship, and the record confirms Plaintiff's repeated notice and acceptance of the Terms.

<u>First</u>, the Opposition does not dispute that Plaintiff was required to click a button to affirm her agreement to the Terms when she signed up for an account and each time she signed in. (Mot. 9–11.) Unable to undermine those dispositive facts, the Opposition relies on distinguishable Ninth Circuit decisions that turned on users presented with a browsewrap agreement that did not require a click of an action button or manifestation of assent to agree to the Terms. (Opp. 8–9.) For example, in *Berman v. Freedom Financial Network, LLC,* the court found a disclosure stating "I agree" untethered to an action button was insufficient. 30 F.4th 849, 858 (9th Cir. 2022) (Opp. 8.) Similarly, in *Godun v. JustAnswer, LLC,* the court affirmed a denial of a motion to compel

arbitration because "the text of the advisals on those pages did not warn users that clicking a button would be deemed acceptance of a contract but "simply began with the phrase 'I agree . . . ." 135 F.4th 699, 707 (9th Cir. 2025). But that is not the case with the Website. Here, Plaintiff was undisputedly required to click action buttons when she signed up or signed into her account. (Mot. 2–5; Bowman Decl. ¶¶ 9, 15, 22, 24, 27, 28.) The Ninth Circuit has confirmed that any "notice defect," as alleged by Plaintiff is "remedied by including language such as, "By clicking the [action] button, you agree to the Terms and Conditions." *Berman*, 30 F.4th at 858. Plaintiff was presented with that precise language and an action button on the Website. (Bowman Decl. ¶¶ 9, 11, 22.) Consistent with *Berman,* the Motion should be granted.

Similarly, the Opposition argues that the language is not conspicuous enough by relying on cases that are materially distinguishable from the Website. (Opp. 8–12.) For example, in *Lopez v. Dave Inc*. (Opp. 9–10), the court determined that the disclosure language was below the action button and the webpage's "cartoon bear draw[s] the user's attention away from the barely readable critical text." 2022 WL 17089824, at *1 (N.D. Cal. Nov. 21, 2022). Here, the Opposition does not (because it cannot) identify any similar distraction that would draw the user's attention away from the notice. (Mot. 2–4.) However, language below the action button is not dispositive. (Mot. 9–10.) Similarly, the Opposition suggests that the use of "gray font" in the disclosure is fatal to TRR's argument. (Opp. 2, 8.) Not so. For example, in *Hooper v. Jerry Ins. Agency*, LLC, the court enforced a "plainly readable" disclosure where the grey text contrasted clearly with a white background that was "conspicuously displayed directly below the action button." 675 F. Supp. 3d 1027, 1035 (N.D. Cal. 2023); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586–87 (N.D. Cal. Apr. 23, 2020) (compelling arbitration even though the hyperlinks to the terms were not capitalized or underlined); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79–80 (2d Cir. 2017) ("A reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not.") Here, the Website's disclosure of the Terms was presented in grey text that contrasted with a white background, was underlined to signify the presence of a hyperlink, and while the disclosure was underneath the action button, it

was above the buttons a user must interact with to toggle between the Sign Up and Sign In screens, drawing attention to the language notifying a user that clicking the action button manifested assent to the Terms. (Mot. 2–5; 9–11.)

Second, the Opposition does not, because it cannot, deny Plaintiff's manifestation of assent and ongoing relationship as elements of contract formation which placed Plaintiff on notice that she was agreeing to the Website's Terms, including the arbitration provision. "When a user enters into an agreement with a website that contemplates some sort of continuing relationship that user should expect the relationship to be governed by some contractual terms." *Slaviero v. Baby List, Inc.*, 2026 WL 1097746, at *3 (N.D. Cal. Apr. 22, 2026); *see also Keebaugh v. Warner Bros. Enter. Inc.*, 100 F.4th 1005, 1019 (9th Cir. 2024) (confirming that the "transactional context is an important factor to consider and is key to determining the expectations of a typical customer"). In contrast, the Opposition relies on *Carbonell v. Seatgeek, Inc.* (Opp. 12) addressing a one-time purchase where "[c]onsumers are less likely to be on the lookout for contractual terms when they would not expect to be entering an ongoing contractual relationship." 2025 WL 2643847, at *3 (D. Nev. Sept. 15, 2025); *see also Cruz v. Tapestry, Inc.*, 113 Cal. App. 5th 943, 950, 955–56 (2d Dist. 2025) (Opp. 9, 11) (confirming that the "website involves purchases of goods, not an involved ongoing commercial relationship, thus making it less likely that a user would expect complex contract terms"). In contrast, in *Slaviero*, the court found that because of the nature of the website "a user can expect to visit the [Website] many times and have myriad electronic interactions with [the Website] . . . [which] gives rise to an expectation that the relationship will be governed by contractual terms, which weighs in favor of finding inquiry notice of the Terms of Use." 2026 WL 1097746, at *3. Because access to TRR's Website requires account registration to enter the marketplace and complete transactions, including browsing, buying, or selling goods, the nature of the Website is more akin to *Slaveiero*, where the consumer expects multiple interactions with the website and not a one-off transaction.

Here, Plaintiff registered for an account and had an ongoing relationship, as she "visited [the Website] dozens of times," browsing for products and ultimately placing a purchase. (Compl.

¶ 10.) This ongoing relationship, in conjunction with the notice of the Terms, disclosure language, and unambiguous manifestation of assent, must all be considered when determining whether Plaintiff was reasonably on notice of the Terms. *See Keebaugh*, 100 F.4th at 1019 (confirming that the context of the transaction is one "factor under California law used to evaluate whether a website's notice is sufficiently conspicuous [and] Courts must still evaluate the visual aspects of the notice under the two-part test we articulated in *Berman*"). Plaintiff thus should be compelled to honor the parties' agreement.

Third, and finally, the Opposition fails to address the material, undisputed fact that during each of the dozens of times Plaintiff logged into her account (Compl. ¶ 10), she would have had to look below the disclosure language and clicked the "Sign In" button to reach the Member Sign-In screen. (Mot. 4; Bowman Decl. ¶¶ 21–22.) Plaintiff instead relies on inapposite browsewrap precedent to argue that multiple visits to a website cannot "add up" to reasonable notice (Opp. 14.) Significantly, in each of the cases cited by the Opposition, the hyperlinks to the terms were presented very differently from what Plaintiff saw here. For example, in *Quamina v. Just Answer LLC*, the user was presented with text notice that "appears in the smallest print anywhere on a cluttered page and relies entirely on 'underscore' to provide notice of the hyperlink," which is not analogous to what Plaintiff was presented with on the Website, both in terms of visual notice and the fact that Plaintiff was required to take an action from which her assent was inferred. 721 F. Supp. 3d 1026, 1039–40 (N.D. Cal. 2024).) (Opp. 13–14.) Rather, Plaintiff's experience is more akin to the website in *Oberstein v. Live Nation Enter. Inc.,* where the Ninth Circuit affirmed an order compelling arbitration where users were presented with an action button adjacent to disclosure language informing the user that clicking the button signified consent to the Terms "[a]t three independent stages—when creating an account, signing into an account, and completing a purchase." 60 F.4th 505, 515 (9th Cir. 2023). In *Oberstein*, the court emphasized that the disclosure language was "not buried on the bottom of the webpage or placed outside the action box, but [was] located directly on top of or below each action button" and requiring interaction with a button manifesting assent remedied any notice deficiency. *Id.* at 517. Similarly, Plaintiff was presented

with the disclosure language and action button when she initially registered for an account, as well as each and every time she logged into her account. (Bowman Decl. ¶¶ 25, 27–29.) Plaintiff cannot avoid her obligations under the arbitration agreement when she was provided "dozens" of opportunities to reject assent to the Terms and each time she clicked the action button agreeing to arbitrate.

Fourth, the Opposition seeks to muddle Plaintiff's notice and consent by inverting the chronology of her Website interactions and seeking to emphasize the cookie banner over her undisputed interactions with the sign-up and sign-in pop-up that she interacted with each time she landed on the Website. (*Compare* Opp. § II.B, *with* Opp. § II.C.) While the Opposition seeks to minimize that mandatory flow of the Website by suggesting "[e]ven assuming Ms. Curry did interact with the Sign-in/Sign Up screen" (Opp. 7), TRR has provided evidence that Plaintiff created an account on September 2, 2019, which was required to browse the Website or place a purchase. (Bowman Decl. ¶¶ 8–10.) Plaintiff does not deny those facts and the Court may accept them as undisputed. *See In re Point Cntr. Fin., Inc.*, 2016 WL 11723668, at *2 & n.1 (C.D. Cal. Aug. 30, 2016) ("A party can waive an argument by failing to raise it in their opposition."). Similarly, the Opposition argues that "the overall design of the webpage" is "misleading" based on a screenshot of a website browser of unknown provenance. (Opp. 7.) But in addition to any browser visits, Plaintiff alleges that she also viewed the Website on a mobile device (Compl. ¶ 112), where the Sign Up/Sign In box would have occupied most, if not all, of the screen.[1] (Opp. 7.)

**B. <u>Plaintiff's Reliance on the Cookie Banner Confirms her Notice of the Terms</u>**

Plaintiff alleges reliance on the representations in the Website's cookie banner to support her claims against TRR, but the Opposition asks this Court to ignore that concession of review and the "context of an internet transaction" to find she is not also bound by the disclosure of the Terms in that same banner. (Opp. 3–6.) Plaintiff's position is incorrect for two reasons: First, the Terms are not an unenforceable browsewrap because an action to manifest assent is included in the

[1] While the Opposition asserts that three boxes appear when a visitor lands on the Website, the "Google Account" box in the upper righthand corner (Opp. 7) is unique to counsel's browser settings and is not indicative of what Plaintiff would have seen when she visited the Website.

disclosure language, and Plaintiff concedes she interacted with the cookie banner. (Opp. 4–5.) And second, the cookie banner does not ascribe multiple meanings to the "accept" and "reject" buttons on the cookie banner, so there is no ambiguity to undermine the binding nature of the cookie banner. (Opp. 5–6.)

As a threshold matter, Plaintiff argues that the cookie banner is an unenforceable browsewrap agreement; however, this is not a case where Plaintiff would be bound by the Terms through undisclosed use of the Website. In *Gianne v. Accor Management US Inc.*, the court confirmed that where the language of the cookie banner asserts that the user agrees to provisions by continuing to browse, but requires interaction with the banner before moving to the purpose of the Website, the agreement "is more akin to a sign-in wrap." 2026 WL 925522, at *5 (C.D. Cal. Mar. 31, 2026). Similarly, here, the cookie banner states, in relevant part, "By continuing to browse the site you agree to the Terms of Service and the Cookie Policy." (Compl. ¶ 3.) Thus, Plaintiff was on notice of the Terms, and her continued use manifested her assent.

The Opposition argues that "the context of an internet transaction" is essential to understanding whether Plaintiff was on notice of the Terms (Opp. 3); however, Plaintiff offers no analogous support for why a reasonable internet user would not understand that by continuing to browse the website she would not be bound by the Terms. Even where she clicked the "Reject All" button on the cookie banner—which she allegedly read, understood, and relied upon—Plaintiff offers no basis by which she would expect such an interaction was (or could reasonably be) a rejection of the Website's Terms and/or Cookie Policy. (Mot. 11–13.)

Plaintiff cannot argue that it was reasonable for her to select the "Reject All" button and rely on that representation in asserting privacy claims against TRR but simultaneously ignore that the disclosure language established that "[b]y continuing to browse" (not by clicking "Accept All") Plaintiff manifested her agreement to be bound by the Terms. (Opp. 4.) By interacting with the banner she took it a step further and affirmatively manifested her acknowledgement of the Terms. Plaintiff cannot pick and choose which plain language representations in the cookie banner are binding on the parties. The Opposition's cases do not indicate otherwise. For example, in *Sgouros*

*v. TransUnion Corp.* (Opp. 4), the Seventh Circuit confirmed that where a hyperlink to Terms is presented adjacent to the disclosure language, "the hyperlinked pages [are considered] to be the same as pages in a physical contract" and thus "sufficient to place a reasonable person on notice that there were terms and conditions attached to the [transaction] and that it would be wise to find out what the terms and conditions were before making a purchase." 817 F.3d 1029, 1035 (7th Cir. 2016). The wrinkle in *Sgouros* (unlike here) is that "the webpages on which [plaintiff] completed his [transaction] contained no clear statement that his purchase was subject to any terms and conditions" and the box contained only one hyperlink to "Printable Version," which failed to place the plaintiff in that case on notice that additional terms were part of his agreement. *Id.* at 1035. Plaintiff's reliance on *McClung v. AddShopper, Inc.* is similarly misplaced. (Opp. 4 (citing 2024 WL 189006, at *3 (N.D. Cal. Jan. 17, 2024).) In *McClung*, (1) the cookie banner did not contain a reject button; (2) the plaintiff did not select any button on the cookie banner; and (3) while the banner contained a hyperlink to the Privacy Policy, it did not include any language placing a user on notice that by browsing the website the user was consenting to the provisions in the Privacy Policy (much less that a set of Terms were relevant to use of the website). Case No. 3:23-cv-01996-VC, Pl. Br. in Opp. To Defs. Motions to Dismiss, Dkt. No. 60, at 15–17.[2]

Here, Plaintiff was presented with a cookie banner that contained disclosure language and a hyperlink to the Terms of Service and Cookie Policy, indicating that further interaction with the website would bind a user to the Terms, just as if the Terms were pages to a physical contract that Plaintiff signed. *Sgouros*, 817 F.3d at 1035; *see also* Bowman Decl. ¶ 41. Further, unlike *McClung*, Plaintiff interacted with the cookie banner (Compl. ¶ 4), and even relied upon the representations in that cookie banner for her claims (*id.* ¶¶ 13, 14, 70, 99). Plaintiff cannot rely on some of the representations in the cookie banner and reject others. *Penning v. NVIDIA Corp.* is instructive because (like here) the plaintiff brought claims after rejecting tracking cookies based on his interactions with the cookie banner, but the court confirmed that interaction placed the plaintiff on adequate notice of the Terms of Use (and its arbitration agreement) hyperlinked in that banner.

---

[2] The opinion in *McClung* that Plaintiff relies on denies Defendants' Motion to Dismiss, and does not respond to, or analyze, any request to compel arbitration.

2026 WL 1433313, at *1, 2, 8 (N.D. Cal. May 21, 2026). The court compelled arbitration stating that:

> The Complaint therefore alleges not only that Plaintiff saw and reviewed the cookie banner but also that he relied upon and was misled by representations made in the cookie banner. Plaintiff cannot pick and choose by claiming he saw the representations in the cookie banner regarding cookie use on the site but denying that he saw other representations in the cookie banner regarding [defendant's] Terms of Service.

*Id.* at *8. The same is true here. Plaintiff asserts that TRR "led Plaintiff to believe she could reject or opt out of these interceptions by displaying the cookie pop-up banner that Plaintiff used to reject Defendant's use of cookies." (Compl. ¶ 13.) Thus, Plaintiff's allegations confirm that she reviewed and relied upon the representations in the cookie banner, which include the hyperlinked Terms.

Second, the Opposition argues that the cookie banner "ascribes multiple meanings" to the actions buttons and such ambiguity negates the binding nature of the agreement. (Opp. 5–6.) However, the plain language of the cookie banner does not link the "accept" or "reject" buttons with assent to, or rejection of, the Terms. (Compl. ¶ 3.) Plaintiff compares TRR's cookie banner with the disclosure in *Herzog v. Superior Court* (Opp. 5-6), which read: "By ticking the boxes below you understand that your personal information, including your sensitive health information, will be collected, used and shared consistently with the Privacy Policy and Terms of Use." 101 Cal. App. 5th 1280, 1297 (4th Dist. 2024). The court found that the disclosure language would not place a reasonably prudent internet user on notice that the Terms of Use were intended to govern any matters "other than the scope of the user's waiver of privacy rights and the management of the user's personal information." *Id.* at 1297. Here, however, there is no ambiguity.

The banner's disclosure language reads: "By continuing to browse the site you agree to the Terms of Service and the Cookie Policy," (Compl. ¶ 3) which does not link either the "Accept All" or "Reject All" button to acceptance or rejection of the Terms of Use. By using the language "[b]y continuing to browse," the disclosure made clear that any selection on the cookie banner referred only to the user's privacy preference and not a decision as to applicability of the Terms. As noted in *Baugus v. Event Tickets Center, Inc.*, "the real deficiency troubling the *Herzog* court [was that]

the additional notice also referred to the relevant terms in a manner inconsistent with the primary notice." 2026 WL 866840, at *22 (S.D.N.Y. Mar. 30, 2026). In *Baugus,* the court was faced with a similar allegation that "a consumer could reasonably understand the hyperlinked 'terms & policies' narrowly refer[red] to the finality of sale and the enumerated credit card charges, or, alternatively, the full set of terms and arbitration clause." *Id.* at *21. Here, however, there is solely one disclosure and it cannot be ascribed with multiple potential meanings, or a narrow agreement to a subset of the provisions. TRR's "decision to split [the disclosure from the action button] does not make [the plaintiff's] consent ambiguous. *Id.* at *22.

The TRR cookie banner—like the one is *Baugus* and unlike *Herzog*—does not contain any inconsistency. A reasonably prudent internet user would understand that "browsing the website" was the action manifesting assent to the Terms, and that the "Accept All" and "Reject All" buttons managed only the user's privacy preferences. *See, e.g., Hong v. StubHub, Inc.*, 2024 WL 4720924, at *6 (C.D. Cal. Sept. 9, 2024) ("Here, in contrast, there was no misleading description of what agreeing to Defendant's terms and conditions entailed.") Thus, the clarity of the language in the cookie notice, coupled with Plaintiff's concession that she read, understood, and relied upon the representations in the notice constitute assent to the Terms, including the arbitration agreement. Her interaction with the cookie banner was an acknowledgement of her notice and cannot reasonably be read as a rejection of those Terms.

## III. CONCLUSION

For the foregoing reasons, and those presented in the Opening Brief, The RealReal Inc. respectfully requests that the Court compel Plaintiff to arbitrate her claims and stay this action pending the outcome of that proceeding.

Dated: June 24, 2026

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ Paul A. Rosenthal*
Paul A. Rosenthal

Attorneys for Defendant The RealReal Inc.